```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GENNADY LOMAKO,                                  :
                                                 :
                Plaintiff,                       :    09 Civ. 6066 (HB)
                                                 :
        -against-                                :    OPINION & ORDER
                                                 :
NEW YORK INSTITUTE OF TECHNOLOGY,                :
HESKIA HESKIAOFF, and AYAT JAFARI,               :
                                                 :
                Defendants.                      :
------------------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Gennady Lomako ("Lomako" or "Plaintiff"), proceeding *pro se*, filed his initial Complaint in this action against Defendant New York Institute of Technology ("NYIT" or "Defendant") on July 6, 2009. Lomako filed an Amended Complaint on December 23, 2009, in which he added two Defendants: Heskia Heskiaoff and Ayat Jafari (the "Individual Defendants"). The Amended Complaint is virtually identical to the initial Complaint in its allegations, except that it adds one additional cause of action, but in essence it alleges various claims that relate to Lomako's employment with NYIT. Specifically, Lomako brings claims for (1) hostile work environment, retaliation and discrimination on the basis of his national origin, age and disability pursuant to (a) the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (b) the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), (c) the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* ("ADA"), (d) the New York State Human Rights Law, N.Y. Exec. L. § 296 ("NYSHRL") and (e) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502 ("NYCHRL"); (2) conspiracy to violate civil rights under 42 U.S.C. § 1985; (3) negligence in failing to prevent such conspiracy under 42 U.S.C. § 1986; (4) breach of the collective bargaining agreement ("CBA") between NYIT and his union, the American Association of University Professors at the New York Institute of Technology, Inc. ("AAUP NYIT") (5) breach of an alleged oral agreement

1

between himself and NYIT; (6) extortion under N.Y. Penal Law § 155.99-155.45; and (7) detrimental reliance. NYIT now moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, NYIT's motion is granted.[1]

## I. FACTUAL BACKGROUND[2]

Plaintiff is a 60-year-old man of Russian national origin. Plaintiff began his employment at NYIT in 1992 as an adjunct professor of computer science. While maintaining an adjunct professorship position at NYIT, Plaintiff also obtained a position as a tenured associate professor at the Bloomfield College of New Jersey. In the spring of 2000, NYIT advertised an open position for a tenure-track professorship in the Computer Science Department at its Manhattan Campus. Lomako, having been awarded a research grant from the Panasonic Information and Networking Technologies Laboratory ("PINTL"), was told by certain members of the NYIT administration that he was in a good position to be considered for the new tenure-track position. Lomako attended an interview for the position in July 2000; after the interview, he was informed that he had been recommended for the position, but as a condition of his acceptance of the position, Lomako demanded "tenure on the spot." He was allegedly informed that there would be "a problem" with his PINTL grant if he did not accept a non-tenured position at NYIT for fall of 2000. Although the allegations of Lomako's complaint do not clearly elucidate the chronology of events, it appears that he began to teach as a full-time, but not tenured, professor at NYIT's Old Westbury campus in January 2001. Apparently Lomako understood that he had accepted the position based on a promise of tenure in the future, as well as a transfer to the Manhattan campus, but a tenured position never was forthcoming and his transfer was repeatedly denied.

---

[1] NYIT moved to dismiss the initial Complaint on November 18, 2009 and the motion was fully briefed on December 15, 2009. Lomako filed his Amended Complaint on December 23, 2009, after the motion to dismiss was fully submitted. As the Amended Complaint is virtually identical to the initial Complaint, the Court will simply apply NYIT's motion to dismiss to the Amended Complaint as though it had been filed on behalf of all three Defendants. Although Plaintiff has requested oral argument on the motion, having reviewed the papers I have determined that oral argument will not be necessary.

[2] For the purposes of this motion to dismiss, the factual allegations of Lomako's complaint are accepted as true. *See, e.g.*, *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 376 (2d Cir. 2009).

Throughout his employment from 2001 until his termination in 2006, Lomako alleges that NYIT repeatedly "breached the AAUP-NYIT collective-bargaining agreement" because, among other things, it denied his requests for written criteria for tenure and reappointment, failed to develop or transmit additional specific requirements for tenure, cancelled requests for research grants, failed to give written performance evaluations, and subjected Lomako to increased supervision. The CBA includes a three-step grievance process. First, union members are to attempt to resolve issues informally. If the matter is not resolved, the member may file a grievance within thirty days of the alleged wrong. After a conference is held, and if no resolution is reached, the union or NYIT may notice the grievance for arbitration before the American Arbitration Association within ten days of receipt of the decision after the second step of the process. Although Lomako alleges that he spoke with and received advice from union officials on several occasions beginning in May 2003, the Complaint does not allege that any formal grievance was filed.[3]

Lomako also alleges that on several occasions during his employment, he was the victim of discrimination and harassment. For example, the Chairman of the School of Engineering and Technology, Dr. Jafari, once stated that "[t]his is not Russia. . . [i]f you don't like it you can go home." Dr. Jafari also allegedly told Lomako in the spring of 2002 that "he knew Russians; that they could not work independently and had to be controlled; Russians do not know how to manage grants and money and [Lomako] could do a good job only if [Dr. Jafari] controlled [him]; this is not the Soviet Union." Lomako also alleges that he "was treated worse than younger professors." In March 2003, Lomako alleges that Dr. Jafari threatened that he would not support Lomako's tenure, and wrongfully accused Lomako of paying to have his articles published, assuring Lomako that "he knew Russians well, and this is not Russia." As a result of this alleged harassment and discrimination, Lomako alleges that his health deteriorated and that he developed anxiety, depression, angina, hypertension

---

[3] Lomako does, however, make a conclusory allegation, without any supporting facts, that in approximately July 2004, "[t]he AAUP-NYIT did not protect [him] and denied [his] request for arbitration" and that the Union "failed to take [his] complaint seriously." He also alleges that he appealed to the NYIT Faculty Appeals Board – a procedure not provided for in the CBA.

3

and insomnia.  In April 2004, the President of the AAUP-NYIT allegedly supported Lomako in making a request for accommodation of these conditions by obtaining a transfer to NYIT's Manhattan campus.  The transfer request was denied in July 2004.

Ultimately, on May 23, 2005, the Provost of NYIT, Alexandra Logue, sent Lomako a letter informing him that the NYIT Board of Trustees did not act favorably upon his application for reappointment for the following academic year.  Lomako alleges that after he received the May 23 letter, he continued to receive communications from the AAUP-NYIT, and was told that there was a possibility that the Vice President would reconsider Lomako's reappointment.  Lomako "took this reconsideration to mean that the letter dated May 23, 2005 was not necessarily [NYIT's] final decision."  That expectation never came to fruition, however, as Lomako then received another letter, dated August 22, 2005, that acknowledged that the 2005-2006 academic year would be his terminal year of appointment.

## II.  PROCEDURAL HISTORY

Lomako filed his administrative complaint with the New York State Division of Human Rights ("DHR") on May 22, 2006, charging NYIT with discrimination based on age, disability, national origin and retaliation.  Lomako contends that he requested that the complaint be "dual-filed" with the Equal Employment Opportunity Commission ("EEOC"), but this was never done.  The DHR investigator held a conference on February 9, 2009, at which testimony was heard from witnesses, including Dean Heskiaoff and Dr. Jafari.  On February 27, 2009, the DHR issued its "Determination and Order After Investigation" in which it stated that "[a]fter investigation and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that [NYIT] has engaged in or is engaging in the unlawful discriminatory practice complained of."  The DHR also determined that all of Plaintiff's allegations of discrimination that occurred before May 22, 2005 were time-barred.  Plaintiff was advised that he could appeal the determination to the New York State Supreme Court

4

within sixty days after service of the DHR's determination. Plaintiff did not appeal the DHR's determination; rather, he filed a separate charge with the EEOC on April 8, 2009 alleging violations of Title VII and the ADA, and received a Notice of Right to Sue letter on April 9, 2009. Plaintiff filed his Complaint in this action on July 6, 2009 and filed his Amended Complaint on December 23, 2009.

On April 8, 2010, Plaintiff moved for leave to amend his Complaint yet again, in order to assert additional discriminatory acts of retaliation as part of the "continuing violation" of his Title VII rights. See Pl's Notice of Motion, Apr. 8, 2010. Plaintiff received an additional Right to Sue letter on January 14, 2010, and his proposed Second Amended Complaint contains four new paragraphs of allegations that he asserts are relevant to his argument that he is the victim of a "continuing violation" of rights as guaranteed by Title VII. Defendants argue that Plaintiff should not be granted leave to amend his Complaint yet again, because the Pre-Trial Scheduling Order prohibits adding causes of action or defenses after February 2010. See Order, Nov. 4, 2009 (Docket No. 7). The Court agrees with Defendants and therefore denies Plaintiff's motion file a Second Amended Complaint.

### III. DISCUSSION

#### A.    Legal Standard on Motion to Dismiss

According to the Supreme Court's most recent decisions, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific inquiry" that requires application of "judicial experience and common sense." *Id.*

5

With respect to employment discrimination cases, in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), which preceded *Twombly* and *Iqbal*, the Supreme Court rejected a heightened pleading requirement for Title VII cases.

Accordingly, to overcome a motion to dismiss, a complaint in a Title VII case need not establish a prima facie case of employment discrimination, but must be facially plausible and must give fair notice to the defendants of the basis for the claim. *Barbosa v. Continuum Health Partners, Inc.*, 2010 WL 768888 at *3 (S.D.N.Y. March 8, 2010) (SAS); *see also Fowler v. Scores Holding Co., Inc.*, 677 F.Supp.2d 673, 678 (S.D.N.Y. 2009) (VM).

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted)). Courts must interpret *pro se* pleadings "'to raise the strongest arguments that they suggest.'" *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)). Although they should be generously construed, *pro se* pleading "must still abide by the Federal Rules of Civil Procedure." *Jones v. Consumer Info. Dispute Resolution*, 2007 WL 2398811, at *1 (S.D.N.Y. 2007) (citing *McNeil v. United States,* 508 U.S. 106, 113 (1993)).

**B.   DISCRIMINATION CLAIMS**

*1. Federal Discrimination Claims under Title VII, ADEA and ADA are Time-Barred*[4]

Claims under Title VII, the ADEA and the ADA are all subject to the same procedural requirements and related statutes of limitations. Under each of these statutes, a plaintiff may not assert claims based on events that took place more than 300 days before the submission of an

---

[4] Lomako does not clearly delineate which of his claims are asserted against which of the three Defendants. However, it is well-established that a plaintiff may not maintain claims under any of the federal statutes under which Lomako has asserted his discrimination claims against an individual defendant. *See, e.g.*, *Darcy v. Lippman*, 2009 WL 3416168 at *3 (2d Cir. Oct. 22, 2009) ("[T]he ADA and ADEA, like Title VII, do not provide for actions against individual supervisors.") (citing 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5); 29 U.S.C. § 630(b); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-16 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). Accordingly, this section will address Lomako's federal discrimination claims only with respect to NYIT.

6

administrative charge of discrimination to the EEOC or other local employment discrimination agency, such as the DHR. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)(1) into ADA); *see also AMTRAK v. Morgan*, 536 U.S. 101, 118 (2002) (holding claims of hostile work environment are timely so long as they are filed within 300 days of any act that "contribut[es] to the claim"); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with [an administrative agency] and obtained a right-to-sue letter."). These filing deadlines act as a statute of limitations, and failure to file a timely administrative charge acts as a bar to a federal action. *See, e.g.*, *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004). Here, Lomako filed his DHR complaint on May 22, 2006; thus any claim that accrued before July 26, 2005 – 300 days before May 22, 2006 – is time barred.[5]

In this case, Lomako expressly alleges in his complaint that he was advised by the Provost of NYIT of the final decision to deny his application for reappointment on May 23, 2005. This letter was followed by another letter, dated August 22, 2005, that confirmed that the 2005-2006 academic year would be his terminal year. It is clear that Lomako "knew or should have known" of the adverse employment decision on May 23, 2005; the fact that he was hopeful that the decision would be reconsidered, that he received another letter that later confirmed this determination, or that his employment at NYIT did not actually end until 2006, does not change this result. Additionally, Lomako alleges no acts that occurred after May 23, 2005 that could constitute a hostile work environment so as to extend the statute of limitations on his claims under that theory. Accordingly, because all of Lomako's allegations of discrimination occurred before July 26, 2005, his federal

---

[5] The limited record before the court reflects that Lomako's DHR complaint was not dual-filed with the EEOC, as he had allegedly requested to be done, and that his EEOC complaint was not filed until April 8, 2009. However, viewing the allegations in the light most favorable to Lomako, as I must, the Court will presume, for the purposes of this motion only, that the DHR filing also constituted a contemporaneous filing with the EEOC on the same date. Even with this presumption, however, Lomako's claims are clearly time-barred, as discussed below.

discrimination claims are time-barred, unless some exception applies.[6] Lomako makes two principal arguments in opposition to this conclusion: first, he contends the discrimination alleged in his complaint is part of a "continuing violation" and that the statute of limitations is thus tolled; alternatively, he argues that his discrimination claims were tolled during the approximately 33 months during which his DHR proceeding was pending. Neither argument has merit.

### (a) Continuing Violation Doctrine Does Not Apply

There is, as Lomako contends, a "'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when 'there is evidence of an ongoing discriminatory policy or practice.'" *Harris v. City of N.Y.*, 186 F.3d 243, 248 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)); *see also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) ("The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of discrimination* even if those acts, standing alone, would have been barred by the statute of limitations.") (emphasis in original). "Even where there is no formal policy, the continuing violation theory may be used where there have been specific and related instances of discrimination and the employer has permitted them to continue unremedied." *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001). In cases in which the continuing violation doctrine is applicable, the accrual of a claim is delayed until the last

---

[6] Lomako's Complaint also includes allegations relating to testimony given by Dean Heskiaoff and Dr. Jafari at the DHR proceeding in February 2009. Any statements made at the DHR conference, however, cannot form the basis for Lomako's claims. First, to the extent they are alleged in support of his employment discrimination claim, they are inapplicable because, having occurred after his termination from NYIT, these statements cannot constitute a "material adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also* N.Y. Exec. L. § 296(1) (prohibiting action by an "employer" that constitutes discrimination "in terms, conditions or privileges of employment"); N.Y. Admin. Code. § 8-107 (same). To the extent they are intended to form the basis of a retaliation claim, they likewise are not actionable because they are subject to the absolute privilege afforded to statements made in judicial or quasi-judicial proceedings. *See Kelly v. Albarino*, 485 F.3d 664, (2d Cir. 2007) (per curium) (affirming application of absolute privilege; finding "this is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege"); *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, 06-cv-1260 (KAM), 2009 U.S. Dist. LEXIS 111675, at *27-29 (E.D.N.Y. Dec. 1, 2009); *see also Allen v. St. Cabrini Nursing Home, Inc.*, 00 Civ. 8558 (CM), 2001 U.S. Dist. LEXIS 3340, at *15-16 (S.D.N.Y. Mar. 9, 2001) ("Statements submitted to administrative agencies are protected by absolute privilege."); *Meyers v. Amerada Hess Corp.*, 647 F. Supp. 62, 64-65 (S.D.N.Y. 1986) (applying absolute privilege in context of DHR proceedings). Although the majority of cases apply this privilege in the context of defamation claims, it appears that it is equally applicable to claims of retaliatory discrimination.

discriminatory act that was done in furtherance of the practice or policy. *Harris*, 186 F.3d at 248. However, multiple and even similar discriminatory acts that are merely "discrete incidents of discrimination [and] are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation." *Van Zant*, 80 F.3d at 713. Although, viewed in the light most favorable to Plaintiff, the Complaint does allege numerous instances of alleged discrimination that took place between 2000 and 2005, there is nothing that supports any pattern, practice or policy of discrimination. Put another way, nothing alleged by Plaintiff binds together the instances of alleged discrimination. *See, e.g.*, *Mirasol v. Gutierrez*, No. 05 Civ. 6368 (DC), 2006 U.S. Dist. LEXIS 16465, at *16 (S.D.N.Y. Apr. 5, 2006) ("[C]ourts in this circuit have granted motions to dismiss for failure to state a claim where, as here, plaintiff's sole basis for the application of the continuing violation doctrine is the conclusory allegation that the acts were a pattern."). Accordingly, the continuing violation exception does not apply in this case.

### (b) Federal Discrimination Claims are Not Tolled Pending DHR Proceeding

Although not made terribly clear in his opposition to the instant motion, Lomako appears to argue that his discrimination claims were tolled during the pendency of his DHR proceeding between May 22, 2006 and February 27, 2009. Unfortunately for Lomako, this simply is not the law. The overwhelming weight of the authority has held that pending administrative proceedings do not toll the statutes of limitations of federal claims. *See, e.g.*, *Ricks*, 449 U.S. at 261 (finding EEOC appeal did not toll Title VII claims); *DeSalvo v. Metropolitan Opera Ass'n, Inc.*, 162 F.3d 1147 (2d Cir. 1998) (finding no tolling for administrative grievance under ADEA); *Gardner v. Wansart*, No. 05 Civ. 3351, 2006 U.S. Dist. LEXIS 69491 (S.D.N.Y. Sept. 26, 2006) (finding no tolling of ADA claim during pendency of administrative proceeding). Accordingly, this argument does not revive Lomako's time-barred federal discrimination claims.

\* \* \*

Based on the foregoing, the Court must find that Lomako's substantive federal discrimination claims – irrespective of the statute under which they arise – are time-barred and must be dismissed.[7]

### 2. Claims for Conspiracy to Violate Civil Rights and Negligence in Preventing Such Conspiracy are Time-Barred

Lomako also brings claims for conspiracy to interfere with civil rights and negligence for failure to prevent such conspiracy. Although his initial Complaint did not so specify, the Amended Complaint makes clear that Lomako has brought these claims under 42 U.S.C. § 1985(3) and § 1986, respectively.[8] Without addressing the merits of either of these claims, it is clear from the face of the complaint that they are time-barred and must therefore be dismissed.[9] Claims that arise under § 1985

---

[7] Having determined that Lomako's federal discrimination claims are time-barred, the Court need not address NYIT's alternative argument that the claims are barred by collateral estoppel as a result of the DHR's "no probable cause" determination. However, it is worthwhile noting that NYIT's argument is simply wrong. The Supreme Court expressly held in *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986), "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." The Court subsequently extended that rule in *Astoria Federal Savings & Loan v. Solimino*, 501 U.S. 104, 110-114 (1991), where it held that the ADEA implicitly deprived state administrative proceedings of preclusive effect. While neither the Supreme Court nor the Second Circuit has yet addressed whether the same rule applies to ADA claims, district courts in the Circuit, as well as the Courts of Appeals for the First and Ninth Circuits, have likewise held that ADA claims are not entitled to preclusive effect based on unreviewed state administrative determinations. *See, e.g.*, *Ragusa v. United Parcel Serv.*, 05 Civ. 6187 (WHP), 2008 U.S. Dist. LEXIS 15599, at *14-15 (S.D.N.Y. Mar. 3, 2008); *Smith-Henze v. Edwin Gould Servs. for Children & Families*, 06 Civ. 3049, 2006 U.S. Dist. LEXIS 93076, at *12-13 (S.D.N.Y. Dec. 21, 2006); *Greenberg v. New York City Transit Auth.*, 336 F. Supp. 2d 225, 241-42 (E.D.N.Y. 2004); *see also Medeiros v. City of San Jose*, No. 98-16530, 1999 U.S. App. LEXIS 18810, at *4 (9th Cir. 1999); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n.5 (1st Cir. 1998); *cf. Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 735 (2d Cir. 2001) (noting in dicta that "to the extent [plaintiff's] employment discrimination claims were based on the ADA, the determination of the [DHR] would have no effect on subsequent federal litigation"). Accordingly, none of Lomako's federal discrimination claims would be precluded as a result of the DHR's "no probable cause" determination.

[8] 42 U.S.C. § 1985(3) provides that:
> [i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1986 provides that:
> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

[9] Although NYIT did not squarely address the timeliness of these claims, having neglected to recognize that they are in fact claims arising under §§ 1985(3) and 1986, the Court may address the timeliness of claims *sua sponte*. *See, e.g.*, *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (courts may dismiss a complaint on statute of limitations grounds *sua sponte*); *Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir. 1995), *cert. denied sub nom. Pataki v. Baker*, 516 U.S. 980, *vacated on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) ("[*Sua sponte* dismissal] is . . . appropriate if it appears from the face of the

based on conduct that occurred in New York are governed by a three-year statute of limitations. *See, e.g., Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). For claims brought under § 1986, the limitations period is one year. *Paige v. Police Dep't*, 264 F.3d 197, 199 n.2 (2d Cir. 2001); *Carvel v. Franchise Stores Realty Corp.*, 08 Civ. 8938 (JGK), 2009 U.S. Dist. LEXIS 113410, at *22-23 (S.D.N.Y. Dec. 2, 2009). Under both statutes, the claim accrues at the time the discriminatory decisions were made by the alleged conspiracy and Plaintiff became aware of that decision. *See Scott v. NASCAR*, 06 Civ. 6029 (DAB), 2008 U.S. Dist. LEXIS 5039, at *33-34 (S.D.N.Y. Jan. 17, 2008); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 407 (S.D.N.Y. 2004) (citing *Powers v. Karen*, 768 F. Supp. 46, 50 (E.D.N.Y. 1991) (holding that plaintiff's § 1986 claim accrued when action of which plaintiff complained occurred)). Although Plaintiff's allegations with respect to conduct that is alleged to have constituted a conspiracy or exhibiting knowledge and ability to prevent such a conspiracy are less than crystal clear, what is clear is that he has alleged no such acts that took place within three years of the filing of the instant Complaint. Accordingly, both Plaintiff's claims for conspiracy to violate his civil rights and negligence in failing to prevent the conspiracy must be dismissed.

    3. *Claims under NYSHRL and NYCHRL are Dismissed*

Lomako has also brought claims under both the NYSHRL and NYCHRL, presumably against all Defendants.[10] Both statutes contain an "election of remedies" provision, which permits a litigant to elect to pursue his or her claims either in the administrative setting or in the courts, but not both. Specifically, the NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful

---

complaint that the action is barred, for example by expiration of the statute of limitations."); *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 635 n.4 (S.D.N.Y. 2004) ("The Court has the power to dismiss . . . *sua sponte* on statute of limitations grounds when, as here, the basis for dismissal is apparent from the complaint."

[10] The fact that Lomako's administrative charge named only NYIT does not prevent him from bringing claims against Heskiaoff and Jafari under the NYSHRL or NYCHRL, as neither statute requires exhaustion of administrative remedies. *See* N.Y. Exec. L. § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages."); N.Y.C. Admin. Code § 8-502 (requiring only that plaintiff filing New York City Human Rights Law claim serve complaint on City before commencing action); *see also Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997) ("Branker's claim under the NYSHRL is not administratively barred, because that statute contains no requirement of administrative remedies."); *Hernandez v. New York City Dep't of Corp. Counsel*, No. 94 Civ. 9042, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997) ("Unlike Title VII, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies.").

discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. L. § 297(9). The NYCHRL's election provision contains virtually identical language. *See* N.Y.C. Admin. Code § 8-502(a).

Thus, as the Second Circuit has acknowledged, "by the terms of the statute and code, respectively, the [NYSHRL] and [NYCHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Association of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) (citing *Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995)); *see also Benson v. North Shore-Long Isl. Jewish Health Sys.*, 482 F. Supp. 2d 320, (E.D.N.Y. 2007).

Here, Lomako filed a complaint with the DHR alleging discrimination on the basis of his national origin, age and disability – the exact claims he seeks to bring in this Court. After an investigation, the DHR issued its determination of "no probable cause." Because Lomako chose to have his claims adjudicated in the DHR, and because no exception applies, this Court lacks subject matter jurisdiction over his NYSHRL and NYCHRL claims and they must be dismissed.

C.     **BREACH OF COLLECTIVE BARGAINING AGREEMENT**

As noted, reading Lomako's Complaint as liberally as possible, it appears that he brings two distinct claims for breach of contract: first, he claims that NYIT breached its CBA with the AAUP-NYIT in various ways; second, he alleges NYIT breached an oral agreement as to the terms of his tenure-track professorship. NYIT fails to address the latter basis for the breach of contract claim and argues only that the claim based on the CBA should be dismissed for failure to exhaust contractual remedies.

Although Lomako's claim is nominally pled as a claim for breach of contract, it is in actuality a claim under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and will be treated as such. That is, an employee may bring a claim against his employer (or former

employer) alleging that it breached a collective bargaining agreement, but because such claims require interpretation of the terms of the CBA, they are governed under the LMRA, and not ordinary breach-of-contract principles.  *See, e.g.*, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 409-11, 420 (1985); *Dougherty v. American Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990).

Before an employee can bring an action under § 301, he must "at least attempt" to exhaust the grievance procedures that are provided in the CBA.  *See Vaca v. Snipes*, 386 U.S. 171, 185 (1986); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976As to the second exception to exhaustion, to show a breach of the duty of fair representation a plaintiff must allege that (1) the Union's conduct was arbitrary, discriminatory, or in bad faith and (2) the union seriously undermined the arbitral process.  *Sim v. New York Mailers' Union*, 156 F.3d 465, 467 (2d Cir. 1998); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 16 (2d Cir. 1993).  However, a union's duty of fair representation "permits a broad range of discretion in carrying out its role as representative, and judicial review of union actions must be 'highly deferential.'"  *Yarde v. Good Samaritan Hosp*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).  Actions by a union "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).  Where a plaintiff attempts to bypass the exhaustion requirement by bringing a "hybrid" § 301/duty of fair representation claim, the statute of limitations for any such claim is six months from the time when the employee knew or should have known of the breach of the duty of fair representation.  *Del Costello*, 462 U.S. at 164; *White*, 128 F.3d at 114; *see also Campbell v. Kane, Kessler, P.C.*, 144 Fed. Appx. 127, 130 n.1 (2d Cir. 2005).

Here, Lomako alleges that he approached certain union officials regarding his complaints as to his treatment.  Viewing his complaint liberally, these allegations likely are sufficient to show that he satisfied the first step of the grievance procedure set forth in the CBA – *i.e.*, to attempt to resolve

issues informally.  However, there are no allegations that relate to any attempt to exhaust the remainder of his contractual remedies.  Lomako does allege that in approximately July 2004, "[t]he AAUP-NYIT did not protect [him] and denied [his] request for arbitration."  Without more, this allegation is surely insufficient to shoulder the burden to show that he should be exempt from having to exhaust his contractual remedies either by reason of repudiation or breach of the union's duty of fair representation.  But, even assuming the claims were plausible on their face, they would nonetheless be time-barred under the six-month statute of limitations for "hybrid" § 301 claims.  Accordingly, Lomako's claim of breach of the CBA must be dismissed.

### D.     REMAINING STATE LAW CLAIMS

All of Plaintiff's remaining causes of action allege violations of state law, *i.e.*, "extortion," breach of contract and "detrimental reliance."  Where a plaintiff lacks a valid federal claim, a district court has discretion to decline to exercise supplemental jurisdiction over his pendent state-law claims.  *E.g.*, *Matican v. City of N.Y.*, 524 F.3d 151, 154-55 (2d Cir. 2008) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)); *Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3).  Here, all of Plaintiff's federal causes of action have been dismissed, and this Court exercises its discretion and declines to exercise supplemental jurisdiction over his remaining state-law claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant NYIT's motion to dismiss is GRANTED and the Complaint is hereby dismissed in its entirety with prejudice. The Clerk of this Court is instructed to close this motion (Docket No. 18) and to close this case and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
May 12, 2010

_____
U.S.D.J.